/0-21-03

FILED

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

2003 NOV 21  A 11: 31

US DISTRICT COURT
BRIDGEPORT CT

RECYCLED CONSTRUCTION             :
MATERIALS, INC.,                  :
    Plaintiff,                    :
                                  :      CIVIL ACTION NO.
    v.                            :      3:02CV211 (SRU)
                                  :
OHIO MACHINERY COMPANY,           :
    Defendant.                    :

## RULING ON DEFENDANT OHIO MACHINERY COMPANY'S MOTION FOR PREJUDGMENT REMEDY

This action arises out of a lease/purchase agreement for a machine called the IROCK 250,

between lessor, Ohio Machinery Company ("OMC"), and lessee, Recycled Construction

Materials, Inc. ("RCM"). The IROCK 250 (the "machine") is a piece of industrial equipment

used to crush concrete, rock, and asphalt. In its complaint, RCM charges OMC, with: (1) breach

of contract, (2) breach of express warranty, (3) breach of implied warranty, (4) breach of

warranty of fitness for a particular purpose, and (5) failure to properly repair.

OMC has filed a counterclaim for: (1) breach of contract, (2) conversion, and (3) unjust

enrichment. OMC has moved for a prejudgment remedy of replevin. On April 16, 2003,

following an evidentiary hearing, Magistrate Judge William I. Garfinkel recommended that

OMC's application for a prejudgment remedy of replevin be granted. RCM filed a timely

objection to Judge Garfinkel's recommended ruling. This court reviews the recommended ruling

on the motion for prejudgment remedy under a *de novo* standard. For the reasons stated below,

Judge Garfinkel's recommended ruling is accepted and adopted, and OMC's motion for a

prejudgment remedy of replevin is GRANTED.

## I.    Factual Background

RCM is engaged in the business of recycling materials used in buildings, highways, and parking lots slated for demolition. RCM's business requires machinery capable of crushing industrial materials, such as concrete, rock, and asphalt. RCM had been leasing one such machine, the IROCK 150, but was unhappy with its performance because "it was constantly breaking down." Deposition of Anthony Parisi, p. 27 (January 9, 2003). On OMC's recommendation, RCM terminated its lease on the IROCK 150, traded in its Eagle Plant (another type of crushing machine), and entered into the lease/purchase agreement in question on May 11, 1999. Under the agreement, RCM could return the machine any time after the first six months. OMC was to sell the Eagle Plant on behalf of RCM at a profit, and did sell it, but OMC has not yet accounted for that sale. RCM believes that it is due an additional $22,000 credit towards its lease payments as a result of the Eagle Plant sale.

Under the agreement, RCM was required to pay $15,000 plus tax per month, for a total monthly payment of $16,050. Taxes were later deducted from the total when RCM provided papers proving its exemption from Ohio state tax. The agreement further provided that RCM could purchase the machine for a total of $575,000, with $9,250 of each monthly lease payment credited towards the purchase price. The machine was not new; it had been manufactured in 1996 and leased to other customers prior to the agreement with RCM.

There are several issues that remain contested. First, there is a dispute over ownership of the machine, which affects the replevin issue. RCM has expended a great deal of money to repair

2

the machine. RCM argues that its investment in the machine constitutes a purchase and thus that it holds property interest in the machine. OMC argues, however, that it maintains a superior property interest.

Second, RCM alleges that OMC misrepresented the machine's capacity and condition. There is a great deal of debate over whether a warranty applies to the machine, because several invoices describe the machine as "new." OMC contends that the designation in the invoices results from a computer system mistake. RCM also contends that, unbeknownst to it at the time of the agreement, the machine suffered severe defects. The machine had been involved in a collision with a bridge that caused damage to the frame. The machine's hour meter had been replaced, distorting the hour reading, and thus the value of the machine. Finally, RCM alleges that OMC misrepresented the identity of the manufacturer and designer of the most important component of the machine, the impactor.

Third, RCM claims the machine was negligently repaired. OMC serviced the machine in May 2001 by installing a rotor manufactured by another company specifically for the machine. RCM believes that this rotor was both improperly manufactured and improperly installed. OMC agrees that the part itself was flawed, but disputes that its installation was faulty. The replacement rotor caused vibration and other problems, but the machine continued to function. OMC agreed to suspend lease payments for a time because of the problems surrounding the rotor, although RCM acknowledged that payments were still due to OMC. The effect of the lease payment suspension was complicated by the manufacturer's refusal to repair the machine unless it was transported to Ohio and further complicated by RCM's refusal to provide such transportation. OMC has since made repeated requests for lease payments from RCM.

Fourth, RCM maintains that it has made all required payments to OMC, but that OMC has demanded additional payments plus the return of the machine. Furthermore, RCM alleges that OMC's accounting methods are flawed and that RCM has actually paid more than required on the orally modified lease agreement. OMC believes that RCM has paid a total of $170,000,[1] whereas RCM contends that it has paid at least an additional $26,000.[2] RCM has expended funds for the ongoing repair of the machine, totaling an estimated $75,000, and which may further reduce the final purchase price. The amount of the final purchase price remains highly contested.[3]

## II.    Standard of Review of the Recommended Ruling

A district judge has the authority to designate a magistrate judge to carry out hearings in order to "submit to a judge of the court proposed findings of fact and recommendations for the disposition" of pretrial motions. 28 U.S.C. § 636(b)(1)(B). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." *Id.* Within ten days, any party may file an objection to the recommended ruling. 28 U.S.C. § 636(b)(1)(C). The district court will then consider timely objections to the recommended rulings under a *de novo* standard of review. *Id.*

On April 16, 2003, Judge William I. Garfinkel issued an order regarding both the motions

---

[1]  Hearing transcript, p.87 (April 8, 2003).

[2]  Hearing transcript, p.10 (April 8, 2003).

[3] OMC estimates that the final purchase price was around $250,000. Hearing transcript, p.91 (April 8, 2003).

in limine and the application for a prejudgment remedy of replevin. The motions in limine have

been resolved. This court is now charged with reviewing Judge Garfinkel's recommended ruling

on the application for a prejudgment remedy of replevin. Judge Garfinkel found that OMC and

RCM entered into a lease agreement for the machine in May 1999, and the agreement contained

an option to purchase the machine. He found that RCM had incurred expenses beyond the

ordinary maintenance of the machine in order to keep the machine functional. He determined that

RCM continues to use the machine, and that RCM's last lease payment for the machine was made

in or about July 2001. Furthermore, Judge Garfinkel found that RCM's owner, Anthony Parisi,

did not exercise his option to purchase the machine. Based on these findings, he concluded that

OMC had met the probable cause standard of the Connecticut prejudgment remedy statute, Conn.

Gen. Stat. § 52-278(a), and therefore, was entitled to a prejudgment remedy of replevin.

## III.    Discussion

OMC moved for entry of an order of prejudgment remedy entitling it to replevy the

machine. The prejudgment remedy of replevin is governed by Conn. Gen. Stat.-§ 52-515, under

which "[t]he action of replevin may be maintained to recover any goods or chattels in which the

plaintiff has a general or special property interest with a right to immediate possession and which

are wrongfully detained from him in any manner, together with the damages for such wrongful

detention." Plaintiff contends that, although the machine qualifies as goods or chattel, OMC fails

to meet the remaining criteria. RCM asserts that OMC does not have the requisite property

interest; that OMC does not have a right to immediate possession; and that RCM has not

wrongfully detained the machine. OMC's burden on its motion for prejudgment remedy is not to

prove these elements, but to demonstrate probable cause that it will prove them at trial. Judge Garfinkel concluded that OMC had met its burden and, accordingly, issued a recommended ruling granting OMC's motion for a prejudgment remedy. For the following reasons, Judge Garfinkel's recommended ruling is accepted and adopted in its entirety.

There is probable cause to believe that OMC will prove at trial that it has maintained the requisite property interest to show that it is entitled to the prejudgment remedy of replevin. There is no dispute that OMC owned the machine prior to the lease/purchase agreement. Currently, OMC maintains title and accounts for the machine in its financial and tax records. RCM makes no such accounting. These facts are not dispositive, but additional evidence points to the conclusion that OMC still owns the machine. The original agreement would have expired in May 2000. At no time during the life of the agreement, nor subsequent to its expiration, did RCM exercise its option to buy.[4] Formal exercise of an option to buy is crucial to effect a purchase under a lease contract with an option to purchase. See Williams v. Lilley, 67 Conn. 50, 62 (1895) ("In contracts of sale upon the purchaser's option, the question whether or not a conversion is effected at all, cannot of course be determined until the purchaser exercises his option . . . ."); Silvia v. Stone, 2001 Conn. Super. LEXIS 1983, 4 (2001) ("In order to prevail on a claim of specific

---

[4] In the hearing before Judge Garfinkel, RCM representative, Anthony Parisi, who signed the May 19, 1999 lease purchase contract on behalf of RCM, testified as follows:

> Q: Did you ever exercise the -- your purchase option on this rock crusher [referring to the machine]?
> A: Not on this particular one.
> Q: Okay. Now there -- other than the [May 19, 1999 agreement] there was no other lease for this particular rock crusher, correct?
> A: Correct.

Hearing transcript, p.76 (April 8, 2003).

6

performance, the lessee must have properly exercised its option rights."); Restat. (2d) of Contracts, § 25, Comment D ("Despite equity's dislike of forfeitures, cf. §§ 229, 361, requirements governing the time and manner of exercise of a power of acceptance under an option contract are applied strictly. It is reasoned that any relaxation of terms would substantively extend the option contract to subject one party to greater obligations than he bargained for.").

Despite RCM's claims of faulty accounting, neither party disputes that OMC has not received a lease payment since July 2001. Although OMC initially agreed to suspend lease payments due to the rotor problem, OMC has not manifested an intent to abandon the machine, and has since made numerous requests for lease payments. There is no documentation to suggest that RCM purchased the machine, nor does RCM offer any indication that such an agreement was entered into. Furthermore, under the terms of the contract, the purchase price is calculated as follows:

> Lessee may purchase the equipment for the purchase price shown on the front hereof and receive the credits indicated against the purchase price from the monthly payments provided Lessee is current in payments under the terms of the Lease Agreement <u>at the time the option to purchase is exercised</u>. If Lessee is not current in payments <u>at the time the purchase price is exercised</u>, the past due payments are immediately due, or the value of these payments will be added to the purchase price.

Lease/Purchase Agreement, paragraph 15 (emphasis added).

This provision indicates that purchase of the machine requires the lessee both to exercise the purchase option and to be current in its payments when such option is exercised. RCM's claim of ownership is likely to fail because the purchase option was never exercised and because RCM has made no lease payments for over two years.

7

There is probable cause to believe OMC will prove at trial that it has a right to immediate possession of the machine. Despite the fact that OMC has not received lease payments from RCM since July 2001, RCM continues to retain the machine. Again, under the terms of the contract:

> If lessee shall make default in punctually paying any rent due . . . lessor shall have the right to retake immediate possession of the machinery and for such purpose lessor may enter upon any premises where the machinery may be, with or without notice of its intention to retake same, and without being liable to any suit of action or proceeding by lessee.

Lease/Purchase Agreement, paragraph 7.

RCM argues that, because terms of the agreement were modified, the court should disregard paragraph 7 and other specific contract provisions. There is no indication, however, that the terms of the agreement were formally modified, even with regard to the dollar amounts due. Under the terms of the agreement itself, "[t]his lease embodies the entire agreement between the parties. It may not be modified or terminated except as provided herein or by other written agreement between the partes. If any provision herein is invalid, it shall be considered deleted from this lease, and shall not invalidate the remaining provisions of this lease." Lease/Purchase Agreement, paragraph 13. Thus, any oral understanding was ineffective to modify the payment clause of the agreement and had no effect on any other provision of the agreement.

There is probable cause to believe OMC will prove at trial that RCM has wrongfully detained the machine. It is uncontested that RCM still possesses and has continued to use the machine. Without a property interest in the machine, this ongoing retention of the machine is wrongful.

8

For the aforementioned reasons, Judge Garfinkel's recommended ruling is accepted and

adopted and OMC's motion for prejudgment remedy (doc #23) is GRANTED.


It is so ordered.

Dated at Bridgeport, Connecticut, this 20th day of November 2003.


Stefan R. Underhill
United States District Judge